## JIM BENNETT V. THE STATE.

No. 19469. Delivered April 20, 1938.
On Rehearing November 30, 1938.
Rehearing Denied February 8, 1939.

The opinion states the case.

*J. F. O'Brien, W. G. Banks* (*deceased*), and *Banks & Nichols,* all of Marshall, for appellant.

*Benjamin Woodall,* County Attorney, *Clayton W. Field, Jr.,* Assistant County Attorney, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is an aggravated assault upon an officer in the lawful discharge of the duties of his office; the punishment, a fine of $300.00 and confinement in jail for 6 months.

While it appears that notice of appeal was given, there is nothing to show that said notice was recorded in the minutes of the court, as required by law. See Art. 827, C. C. P. This should appear from a certificate of the clerk, but in the present instance it merely appears that the instrument containing notice of appeal was filed. The appeal must be dismissed. Carre v. State, 75 S. W. (2d) 265.

The appeal is dismissed.

The foregoing opinion of the Commission of Appeals has

been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON REHEARING.

GRAVES, JUDGE.—The original opinion,—after reinstatement of this appeal,—heretofore rendered herein, is hereby withdrawn and the following inserted in lieu thereof:

It seems that appellant was found in a state of intoxication in the city of Marshall on a public street, and the injured party, Mr. Harrison,—who was a policeman of such city, and dressed in such uniform, and on duty,—was informed that appellant was intoxicated and creating a disturbance upon a public street of said city. He saw appellant on North Washington Street in said city, within two blocks of the city hall, and he appeared to be intoxicated to the policeman, who approached appellant and told him that he, appellant, had too much liquor to be on the street, and to go home. This appellant refused to do, and upon the policeman attempting to arrest appellant, who fled, and in the pursuit of appellant he, appellant, possessed himself of the policeman's club and struck Mr. Harrison on the side of the head and knocked him unconscious for a short time, which wound required five stitches to close. In the meantime a citizen had appeared and pinioned the arms of appellant, and Mr. Harrison finally handcuffed appellant, took him off to the city hall and locked him up. .

Appellant did not testify, but defended on the proposition that his attempted arrest was unlawful, the policeman not having a warrant therefor, and therefore that he had a right to use all necessary force to enlarge himself from such unlawful arrest.

Art. 999, R. C. S. 1925, prescribes the duties and powers of a city marshal, who is ex officio chief of police, and, among other things, says: "It shall be his duty to arrest, *without warrant*, all violators of the public peace, and all who obstruct or interfere with him in the execution of the duties of his office, or who shall be guilty of any disorderly conduct or disturbance whatever. * * * "

Art. 998, R. C. S. 1925, provides, among other things, that: "* * * such officers (policemen) shall have like powers, rights and authority as are by said title vested in city marshals." We, therefore, find city policemen possessed of the same powers as city marshalls and chiefs of police. The dominant question then

arising is whether drunkenness in a public place is disorderly conduct.

In 15 Tex. Jurisprudence, p. 300, we find: "Drunkenness in a public place, which is made an offense by the Penal Code, is clearly disorderly conduct, regardless of the fact that the drunkard is not creating a disturbance." Also in 4 Tex. Jur., p. 749: "In view of the legislative provisions declaring that drunkenness in a public place is an offense, and that a marshal or his deputies may arrest without warrant persons guilty of disorderly conduct or any disturbance whatever, it has been held that a person may be arrested for drunkenness because drunkenness is to be considered per se disorderly conduct."

We quote from Pratt v. Brown, 80 Tex. 613, 16 S. W. Rep. 443: "* * * It remains to determine whether drunkenness in a public place is *per se* 'disorderly conduct' within the purview of Art. 363. We think that it is, although the individual is not otherwise creating a disturbance. In ninety-nine cases out of a hundred perhaps he creates one unless timely arrested and restrained."

We further quote from the opinion by Judge Hurt in Beville v. State, 16 Texas Crim. App. 70, as follows: "N. C. Cargill, marshal of the city of Decatur, and the appellant, deputy marshal, arrested one H. C. Carter within the limits of said city, while said Carter was intoxicated in a public place, and in the act of committing a breach of the peace in the view of said officers. The arrest was made without a warrant. The marshal and appellant, his deputy, carried Carter to the calaboose, a place provided by the city for the detention of city prisoners, and there kept him confined about an hour, when he was liberated on giving an appearance bond. Carter proposed to give such bond when he was arrested, but this was refused by the marshal and appellant. By ordinances of the city of Decatur drunkenness and breaches of the peace are made offenses.

"Appellant was prosecuted to conviction for false imprisonment; from which conviction he appeals to this court. Under the above state of fact, had appellant the right to arrest and imprison Carter as he did? We are most clearly of the opinion that he had. Nor does the fact that Carter offered to give bond when arrested affect the question.

"As stated in the case of Scircle v. Neeves, 47 Indiana, 289: 'There is probably not a city or town in the State making any pretense to proper municipal government that has not an ordinance in substance the same as this (one making drunken-

ness an offense), and whose police officers do not constantly arrest, lock up and afterward carry before the courts, persons who violate its provisions. Such persons must learn that society has the right to protect itself against the evil influences of their example, and that they are proper objects of municipal legislation, arrest and punishment.' This we believe to be the correct doctrine.

"We are of the opinion that it was the duty of the marshal, or his deputy, to arrest and confine Carter until he became sufficiently sober and rational as not to be a nuisance to peaceable and orderly citizens of the city. Society has rights as well as the citizen, and when the good order of society is thus invaded and defied, her officers should act promptly and effectively."

Also see 4 Amer. Juris., p. 28; Corpus Juris, 2nd, p. 588, and the cases there cited.

Webster's International Dictionary defines "disorderly" to mean, among other things, as "Offensive to good morals and public decency, without law or order." We confess that we are unable to class the reputed conduct of Mr. Bennett in being found in an intoxicated condition on a public street of a populous city such as Marshall in any other category than that of one offensive to good morals and public decency, and as conduct without the law, as denounced by Art. 477 of the Penal Code.

The case of King v. State, 103 S. W. (2d) 754, is not in point herein. The arrest without warrant in that particular case was effected by a constable and on King's premises and not in a public place and not by a policeman of a city, and Art. 999, supra, includes neither a sheriff nor a constable in its provisions empowering city marshals to arrest without warrant persons guilty of disorderly conduct. This arrest without warrant is justified, not under Art. 212, C. C. P., but under the broad powers given policemen under Arts. 998 and 999, R. C. S.

Thus believing we hold that policemen have the power under the statute to arrest without warrant persons found in a state of drunkenness in a public place, within their jurisdiction, and that drunkenness in such place is disorderly conduct.

We are aware that this holding evidences a different rule for sheriffs and constables from that of policemen. The former are not included in Arts. 998 and 999, R. C. S., but find their powers enumerated in Art. 212, C. C. P. and Art. 41, C. C. P., which articles may not include the power to arrest for disorderly conduct without a warrant. This leads us to make the suggestion to the Legislature that proper legislation is needed

to place both classes of peace officers on an equal footing relative to the arrest of intoxicated persons without a warrant where the offense is committed in such officers' presence.

In accordance with what we have said, the judgment is affirmed.

### ON APPELLANT'S MOTION FOR REHEARING.

CHRISTIAN, JUDGE.—In his motion for rehearing appellant apparently concedes that, under the circumstances reflected by the record, we were correct in holding in the original opinion that Mr. Harrison, who was a policeman of the City of Marshall, had the authority to arrest appellant without a warrant. However, appellant insists that he had the right to resist the arrest because of the fact that the officer failed to make known his authority and the reason for the arrest.

Adverting to the testimony, it is observed that we were in error in stating in the original opinion that the officer commanded appellant to go home, At this juncture we quote from the testimony of Mr. Harrison, as follows: "I did have an opportunity to see and observe Jim Bennett on this occasion. Yes, sir, he appeared to be intoxicated. What I did and what I said when I got to him was I told him to come on and go with me, that he had too much liquor to be on the street. * * * Yes, sir, I said that I had known the defendant, Jim Bennett, some four, five or six years. Yes, sir, I know him by name as well as by appearance. Yes, sir, he knew me also. I was dressed in my uniform. Yes, sir, the regulation, police uniform on that date. * * * When I told him to come and go with me he said that he was going to the ball game and protested about being arrested. I told him that there was no need to act that way and the young fellow that was with him told him the same thing. I don't know whether he told me that he had not done anything to be arrested for. No, sir, I didn't tell him somebody had filed a complaint against him. Yes, sir, he told me that he wanted to go to the ball game and not to jail."

It is obvious that appellant knew Mr. Harrison was a police officer and acting in his official capacity at the time he arrested him. Also it is clear that the officer advised appellant, in effect, that he was too drunk to be on the street. In short, we think the testimony shows that the officer sufficiently apprised appellant that he was arresting him for drunkenness. It would thus appear that he had met all of the requirements of the law in making the arrest. We quote the rule announced in

Plasters v. State, 1 Tex. Crim. Rep. 673, as follows:

"Whilst it is the duty of an officer attempting to arrest to make known his purpose and the capacity in which he acts, if, however, that purpose and capacity are known to the party when an arrest is attempted, and the arrest is otherwise lawful, submission to arrest is a duty, and resistance is unjustifiable." See, also, Branch's Ann. Tex. P. C., page 1116 and Tiner v. State, 44 Tex. 131.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.